Archie WRIGHT, Claimant Wage-earner,
Soc. Sec. Account No. 115–40–5602,
Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Defendant.

Lena WRIGHT, Claimant Wage-earner,
Soc. Sec. Account No. 079–05–6458,
Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Defendant.

Civ. Nos. 8661, 8662.

United States District Court
N. D. New York.

April 2, 1965.

J. George Follett, Potsdam, N. Y., for
Archie Wright and Lena Wright, plaintiffs.

Justin J. Mahoney, U. S. Atty., Albany,
N. Y., for defendant, Frank A. Dziduch,
Asst. U. S. Atty., of counsel.

PORT, District Judge.

Memorandum-Decision and Order

Jurisdiction of this court is invoked
pursuant to the provisions of the Social
Security Act as amended. 42 U.S.C.A.
§ 405(g). The plaintiff in each of the
above entitled actions seeks a review and
reversal of the final decision of the

616

Secretary of Health, Education and Welfare. The matter is properly before the Court on cross motions for summary judgment.

The claims of Lena Wright (Lena) and Archie Wright (Archie) brother and sister, for old-age insurance benefits were granted. However, the administrative determination suspended benefits in Archie's case for the months of April through October in the years 1957 and 1958. In computing Lena's benefits for the same years, alleged earnings from self-employment were eliminated.

The Secretary treated the entire net income from the operation of a roadside stand as self-employment income of Archie's. The claimants contend the net income should be allocated equally to each as their respective distributive share of the income from a partnership. 42 U.S.C.A. § 411(a), (d). This would result in self-employment income to Archie of less than $1200.00 for each of the years in question, i. e. $1131.51 for 1957 and $1162.55 for 1958.

On the basis of this income, Archie would have been entitled to benefit payments for the months eliminated. 42 U.S.C.A. § 403(e). Lena would correspondingly have been credited with self-employment income in the same amounts for those years. This distribution of income results only if Archie and Lena establish that they were partners during the years in question.

If, under the applicable law, the administrative conclusion that the claimants were not partners during the years 1957 and 1958 is based on findings of fact supported by substantial evidence, the determination of the Secretary must stand; if not, it falls. 42 U.S.C.A. § 405(g).

42 U.S.C.A. § 405(g) accords conclusive finality to "(t)he findings of the Secretary as to any fact, if supported by substantial evidence * * *." The effective application of this Congressional command is not difficult when Administrative and Judicial findings coincide.

Tempting as it may be to do so, the judicial view may not be substituted for the administratively arrived at result if supported by the record. "The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his." Thomas v. Celebrezze, 331 F.2d 541 (4 Cir. 1964).

The plaintiffs had the burden of proof of establishing their entitlement to the benefits claimed. Carqueville v. Flemming, 263 F.2d 875 (7 Cir. 1959).

The Secretary held the evidence failed to establish the formation of a bona fide partnership between the plaintiffs, and therefore, they failed in carrying the burden placed on them. The record supports the Secretary's holding.

The plaintiffs in their briefs complain that "(t)he Referee and the Appeals Council are both obsessed with the finding of a 'bona fide partnership'". The plaintiffs further picture themselves as victims of administrative arbitrariness and of having "been caught up in a tangle of administration double-talk designed to confuse the issue and deny this claim regardless of merit." The plaintiffs support this contention by the following quotation from the Referee's opinion—

"Careful evaluation of the evidence of record and the testimony adduced at the hearing leads to the conclusion that the claimant has failed to sustain the burden of proof of establishing, by credible evidence, that the net self-employment which she states she received as a result of a partnership arrangement between herself and her brother, Archie Wright, properly represents her distributive share of the earnings of a bona fide partnership which did, in fact, exist and the Hearing Examiner so finds."

The paragraph quoted is not artistically stated nor a model of clarity. However, it is clear that the Referee held in that paragraph that he found

claimants had failed to sustain the burden of proof imposed upon them.

■ The terms partner and partnership under the Social Security Act have the same meaning as under the Internal Revenue Code. 42 U.S.C.A. § 411(d). Under the Internal Revenue Code "(t)he term carries its own meaning, * * *." See Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 753 n. 1, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949).

The Referee found that the only evidence to support the claim of a partnership agreement was the testimony of the two claimants and their sister. In evaluating the testimony he considered their interest in the matter, the contradictions in their testimony, and between the testimony on the hearing and previous written statements. He also considered the vagueness of their testimony. He found that the evidence disclosed

> that there was no overt indicia of the existence of a partnership between the claimant (Lena) and her brother Archie Wright. No partnership bank account was established. No written agreement effectuating the alleged partnership was entered into. No purchases were made in the partnership name or with funds known to the seller to be partnership funds. * * * In short, there is nothing to establish the existence of a partnership between the claimant and her brother, other than self serving declarations of the claimant and her brother.

He also found that no partnership books or records were maintained. He also found in substance that the work contribution of Lena to the alleged partnership endeavor was so disproportionate to that of Archie as to militate against the formation of a genuine partnership. He found Lena in the years in question was performing substantially the same services she had performed in the two preceding years for annual salaries of $200.00 and $300.00. In reaching his conclusion, he further found from Lena's testimony "that she helped at the stand and worked in the house not because she was obligated to do so by virtue of a partnership agreement, but because, as a member of the family unit living together, she felt as if she wanted to take part in the family activity and to cooperate in the family venture."

The Referee also found that the alleged partnership was dissolved when it had served its Social Security purposes; that at that time sister Esther was substituted for sister Lena as the alleged partner with Archie. The effect of this, of course, assuming the net income of the operation remained under $2400.00 per annum, would be to build Social Security earning credits for Esther, while preventing deductions from Archie's benefits because of earnings in excess of the allowable limit. In 1958 Lena treated the full amount of soil bank payments made on a farm owned by her and her sister Esther as her income. In 1957 the income was divided; in 1959 it was all to go to Esther. The Secretary treated the income as belonging to Lena and Esther equally, since the soil bank payments were paid to them as co-owners of the particular farm land put into the soil bank. No one can object to how Lena and Esther distribute their income as between themselves, nor can anyone object to the distribution of the income from the roadside stand as between Lena and Archie. The distribution by them of the income as between themselves does not turn the part allocated to Lena into self-employment earnings anymore than a direction by an employee to his employer to pay his wages to his brother would result in giving the brother Social Security credits for earnings.

These findings for which there is support in the record would justify the Secretary's ultimate and crucial inference that the intent to form a partnership was not established.

■ Before the Secretary could find a partnership he had to determine

> whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from

testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' Drennen v. London Assurance Company, 113 U.S. 51, 56, 5 S.Ct. 341, 344, 28 L.Ed. 919; Cox v. Hickman, 8 H.L.Cas. 268. We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes.

Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 536, 90 L.Ed. 670 (1946), Commissioner of Internal Revenue v. Culbertson, supra, 337 U.S., pp. 741, 742, 69 S.Ct. 1210.

Culbertson was remanded to the Tax Court because the Tax Court "did not view the question as one concerning the bona fide intent of the parties to join together as partners." Commissioner v. Culbertson, supra, p. 743, 69 S.Ct. p. 1215.

By substituting "to gain the advantages from benefits under the Social Security Act" for "to avoid the hardship of heavy taxation", and "the Secretary" for "the Tax Court", the following quotation from the concurring opinion of Justice Frankfurter at page 752, 69 S.Ct. at page 1219 of Commissioner v. Culbertson, supra, is particularly apt in outlining the area upon which the court should not encroach:

> Men may put on the habiliments of a partnership whenever it advantages them to be treated as partners underneath, although in fact it may be a case of "The King has no clothes on" to the sharp eyes of the law. Since there are special temptations to appear as a partnership in order to avoid the hardships of heavy taxation, the tribunal which presumably is gifted with superior discernment in differentiating between the real thing and the imitation—the Tax Court—will naturally be on the alert against being taken in. Therefore, a finding by the Tax Court that that which has the outward appearance of an arrangement to engage in a common enterprise is not in fact such an associated busi-

ness venture ought to be respected when challenged in another court, unless such a determination is wholly without warrant in fact * * *.

The defendant's motions for summary judgment dismissing the complaint of the plaintiff in each of the above entitled actions and affirming the decision of the Secretary are granted. The plaintiffs' motions for summary judgment are denied. Submit orders.