Harvey W. EASTTAM, Appellant,

v.

The SECRETARY OF HEALTH, EDUCATION AND WELFARE,
Appellee.

No. 18282.

United States Court of Appeals
Eighth Circuit.

Aug. 11, 1966.

Charles J. Hlavinka, of Atchley, Russell, Hutchinson & Waldrop, Texarkana, Ark.-Tex., for appellant.

John W. Douglas, Asst. Atty. Gen., Civil Div., Washington, D. C., Morton Hollander, Chief, Appellate Section, Washington, D. C., Charles M. Conway, U. S. Atty., Fort Smith, Ark., and Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for appellee.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

Harvey W. Easttam has instituted this action under § 205(g) of the Social Security Act as amended, 42 U.S.C. § 405 (g), for judicial review of the Secretary's final decision disallowing Easttam's claim for a period of disability and for disability insurance benefits under §§ 216(i) and 223, 42 U.S.C. §§ 416(i) and 423. Judge Miller, in an unreported memorandum, upheld the Secretary's decision and entered judgment dismissing Easttam's complaint. The case is here on the claimant's in forma pauperis appeal.

Easttam filed his application on March 12, 1964. In it he stated that he was 53 years of age; that his impairments were high blood pressure, loss of vision in one eye, and poor vision in the other; that he became unable to work on March 10, 1964; that he had been employed as a door builder for over two years immediately prior to the date of his disability; and that he earned about $2800 the preceding year. At an interview in July, 1964, he added complaints of constant pain in his left side and numbness and color changes in his hands in cold weather.

The application met with no success throughout the administrative process, including the initial review, reconsideration, hearing before an examiner, and a request for review by the appeals council.

This court, recently, on a number of occasions, has enunciated and summarized the legal standards applicable to an appeal of this kind. In Brasher v. Celebrezze, 340 F.2d 413, 414 (8 Cir. 1965), we said:

"(a) the claimant has the burden of establishing his claim; (b) the Act is remedial and is to be construed liberally; (c) the Secretary's findings and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence; (d) substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (e) it must be based on the record as a whole; (f) the determination of the presence of substantial evidence is to be made on a case-to-case basis; (g) where the evidence is conflicting it is for the Appeals Council on behalf of the Secretary to resolve those conflicts; (h) the statutory definition of disability imposes the three-fold requirement (1) that there be a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration,* (2) that there be an inability to engage in any substantial gainful activity, and (3) that the inability be by reason of the impairment; (i) such substantial gainful activity is that which is both substantial and gainful and within the claimant's capability, realistically judged by his education, training, and experience; (j) the emphasis is on the particular claimant's capabilities and on what is reasonably possible, not on what is conceivable; and (k) it is not the duty or the burden of the Secretary to find a specific employer and job for the claimant but, instead, some effort and some ingenuity within the range of the claimant's capacity remains for him to exercise."

---

* This latter alternative, by § 303(a) (1) and (2) of Pub.L. 89–97, 79 Stat. 286, applicable to the period subsequent to August 1965, § 303(f) (1), is now "or which has lasted or can be expected to last for a continuous period of not less than 12 months". In view of the result we reach, this amendment has no effect upon the merits here.

See, also, Celebrezze v. Bolas, 316 F.2d 498, 500–501, 507 (8 Cir. 1963); Celebrezze v. Sutton, 338 F.2d 417 (8 Cir. 1964); Marion v. Gardner, 359 F.2d 175, 179–180 (8 Cir. 1966); Nichols v. Gardner, 361 F.2d 963 (8 Cir. 1966).

With these standards in mind, we turn to Easttam's facts. The claimant was born in December 1910. He completed only the fourth grade and has received no specialty training. He is married and has one child who is an adult and is in an institution. He farmed, either for himself or for others, until about 1956. He then worked at the Red River Arsenal as a general laborer until June 1957. This was followed by periods of general farm work and of cutting pulp wood. In February 1962 he went to work for a door factory and was employed there until he quit in March 1964. Since then, he has done odd or "little" jobs for short periods. These have included "bush hogging" (leveling a field with a tractor), cutting wood, digging holes, building fences, and plumbing.

The claimant's case in its present posture rests on acute side pain said to diminish his capacity for lifting and for other physical activity, blindness in the left eye, diminished vision in the right eye, Buerger's disease, chronic hypertension, and shortness of breath. Specifically, he asserts inability to use a power saw because of his side pain and inability to do repairs, or his old work at the door factory, because of poor vision.

Dr. E. B. McGee is a general practitioner and Easttam's personal physician. The file contains three reports from Dr. McGee. In the first, dated July 20, 1964, the doctor noted 20/20 vision in the right eye after correction, 20/200 in the left, nervousness, left side chest pain, numbness of hands, dizziness and weakness, moderate hypertension, the administration of anti-hypertensive medication, a normal heart, some plural adhesions, emphysema, and severe left side discomfort upon exertion. A second report, dated September 16, 1964, noted the development in 1962 of numbness in the hands "especially in the winter months" and left side chest pain; the continuance of these conditions "but the numbness is not severe at present due to the weather"; lifelong inability to see with the left eye; shortness of breath upon "the least exertion"; and the claimant's honesty. The doctor's third report, dated October 12, 1964, noted blindness in the left eye "since birth", Buerger's disease, some relief from hypertension under medication, and dyspnea upon walking or exercise. He appended the comment, "If you are not going to treat this man right say so and stop keeping his hopes up".

There is other medical material. Dr. S. A. Vickers, an internist, saw the claimant on August 12, 1964. His report states that Easttam's primary complaints were progressively failing vision for several years and left side pain since 1961. The doctor noted lifelong poor left eye vision, reliance on right eyesight, the absence of eye trauma or acute change in vision, shortness of breath only on running, and the claimant's father's having similar side trouble, although still living at age 79. On gross testing vision in the left eye was 20/200; that in the right was 20/40. The diagnosis was probable benign essential hypertension, benign prostatic hyperthrophy, pterygium, right eye, diminished visual acuity of the left eye, etiology undetermined; and "In my opinion the chest pain is of skeletal origin". Other conditions were normal. Dr. Vickers suggested that "perhaps an orthopedic evaluation would be helpful in delineating the etiology of the discomfort". Dr. W. R. Siebold, Jr., a radiologist, read the x-rays. He found nothing demonstrative of active pulmonary or heart disease but he did note "Minimal hypertrophic osteoarthropathy, lower thoracic spine".

The hearing examiner summarized the medical evidence as follows:

"From a study of all the medical evidence, including clinical and functional tests, it is established that claimant does have diminished visual acuity of the left eye, which he has had all of his life, and pterygium of the right eye, which does not extend to the cor-

nea and has not seriously impaired the vision. Also, he probably has benign essential hypertension but by medication prescribed by his local medical doctor the blood pressure is controllable, and is and can be kept within normal limits. The hypertension does not appear to have reached any significant level and has not resulted in any end organ damage. There is shown to be some small reduction in claimant's pulmonary reserve but not sufficient to significantly limit any of his activities. In all probability claimant does have some degree of chest pain but this did not appear to be to any severe degree nor related to any cardiovascular or respiratory conditions."

■ Actually, the case for us, on the cold record might possibly be somewhat close. Had the administrative authorities reached an opposite conclusion we might not be able to say that the record does not sufficiently support that determination. But the record is supportive either way and thus presents the classic situation for resolution by the trier of fact. This court is not that trier. The hearing examiner saw and heard the witnesses and was the proper authority to evaluate their testimony. The governing statute, 42 U.S.C. § 405(g), states, "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *" We have said very recently, "Credibility determinations rest with the Secretary and the finality of his findings also extends to reasonable inferences which may be drawn from the evidence". Foss v. Gardner, 363 F.2d 25 (8 Cir. 1966); Cody v. Ribicoff, 289 F.2d 394, 395, 88 A.L.R.2d 970 (8 Cir. 1961).

■ With the claimant's left eye difficulty a lifelong disability which has not prevented his gainful employment in the past, with his own physician acknowledging essentially normal right eye vision with correction even after the application was filed, with the absence of any disabling pathology revealed in the examination by Drs. Vickers and Siebold, with the absence of objective evidence of the

left side pain, with the hypertension under control, with no reliance upon medication for his pain, and with his side and hand complaints substantially antedating his quitting work in 1964, we cannot say that, on this record in its entirety, the Secretary's finding that the claimant is able to engage in substantial gainful activity is not appropriately supported. Asserted pain, in and of itself, is not necessarily disabling. See Celebrezze v. Bolas, supra, p. 506 of 316 F.2d, and Dvorak v. Celebrezze, 345 F.2d 894, 897 (10 Cir. 1965).

We must and do affirm.